UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: _____

**SERGIO PEREZ**,

    Plaintiff,

vs.

**CITY OF OPA-LOCKA**,

    Defendant.

_____/

# COMPLAINT

Plaintiff, SERGIO PEREZ, by through undersigned counsel, hereby sues the Defendant, CITY OF OPA-LOCKA, based on Civil Rights Violations, and states as follows:

## JURISDICTION AND PARTIES

1. This is an action for damages exceeding $75,000.00, not including costs, attorney's fees, and prejudgment interest.

2. The claims asserted arise pursuant to 42 U.S.C. §§ 1983 and 1988, and Title VII of the Civil Rights Act of 1964, as amended. This Court has original subject matter jurisdiction to hear all claims contained in this action.

3. Venue is proper in the Southern District of Florida because all the parties reside in Miami-Dade County and the events complained of occurred in Miami-Dade County.

4. Plaintiff has performed all conditions precedent, in accordance with §768.28(6), Florida Statutes, and all other requirements, before bringing this action. All conditions precedent have otherwise occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable.

## PARTIES

5. Plaintiff, SERGIO PEREZ (hereinafter the "Plaintiff" or "Perez"), is a resident of Miami Dade County Florida and is otherwise *sui juris*.

6. At all relevant times, Defendant CITY OF OPA-LOCKA ("City"), is and was a duly organized public entity existing under the laws of the State of Florida. At all relevant times, the City was an employer of Plaintiff and the various other non-parties referenced herein.

## RELEVANT FACTS COMMON TO ALL COUNTS

7. Plaintiff is a Hispanic male, and was employed as a police officer for the City since 2008.

8. At all relevant times, the City has subjected Plaintiff to disparate treatment, lost wages, and a hostile work environment, all based upon Plaintiff's race.

9. Plaintiff is a Dominican Male who started working for the City in 2008 as a police officer, and whose current position is Sergeant. Plaintiff always carried out his responsibilities diligently however, he has been subjected to discriminatory treatment solely because of his national origin and retaliated against for engaging in multiple protected activities, *i.e.,* internal complaints and whistleblower claims against the City. He has been repeatedly subjected to unequal treatment and different terms and conditions of employment. Plaintiff has noticed a consistent discrepancy in how he is treated less favorably than his Black colleagues.

10. Plaintiff has been unfairly targeted by Michael Steel, who was another police officer employed by the City.

11. On one occasion, Michael Steel, who was then the sergeant in charge of the internal affairs unit of the City's Police Department, targeted Plaintiff and two other Hispanics with various false allegations which subjected them to suspension, ridicule, loss of pay, negative stigma and

loss of advancement opportunities. Plaintiff and the two other Hispanics were fully exonerated.

12. On another occasion, Michael Steel falsely alleged that Plaintiff had battered him by firing a training TASER cartridge at him. In making that false allegation, Michael Steel coached employees under his command to provide false witness testimony against Plaintiff. This resulted in a misdemeanor battery charge being brought against Plaintiff.

13. As a result of that misdemeanor battery charge, Plaintiff was disciplined and demoted from the rank of Captain to Sergeant causing Plaintiff to lose a significant portion of his salary and benefits. Plaintiff was also placed on paid leave during the pendency of the proceedings related to that charge.

14. Within days of Plaintiff's demotion, Michael Steel was promoted to Plaintiff's former position, and bragged that it was "pay-back."

15. In 2012, Michael Steel was the Sergeant in Charge of the internal affairs unit of the Opa-Locka Police Department. In that powerful role, Steel had significant influence and power to carry out his discriminatory acts against the individuals he targeted.

16. The hostile work environment created by Michael Steel, and his disparate treatment of his subordinates, eventually resulted in the filing of fourteen complaints against Michael Steel in 2023, in response to which the City retained an independent firm to investigate Michael Steel.

17. The independent firm issued a report identifying Michael Steel's harassment of multiple officers, and disclosing numerous facts and instances of discrimination and violations of Title VII.

18. Plaintiff was also unfairly targeted by Scott Israel, who was hired as the City's Chief of Police.

19. Plaintiff had submitted two complaints against Michael Steel regarding Michael

Steel's hostile work environment and regarding his perjury and false statements.

20. In addition to questioning Plaintiff regarding the alleged TASER incident with Michael Steel, Scott Israel began inquiring regarding an several year old arrest of a violent individual on illicit drugs who had attacked his own family and which required numerous officers to lawfully subdue and bring into custody. Several officers were injured during that arrest.

21. Regarding that incident, the City conducted an impartial fact-based investigation which was finalized and approved by the City Manager at the time. The related Internal Affairs report concluded that excessive force had not been used and that Plaintiff acted within the scope of Departmental policy.

22. Scott Israel thereafter covertly provided incomplete or inaccurate information to the Florida Department of Law Enforcement ("FDLE") which resulted in another misdemeanor charge being brought against Plaintiff regarding that arrest which occurred years prior and for which Plaintiff had been exonerated.

23. When FDLE brought that second misdemeanor charge based upon Scott Israel's collusion, Scott Israel put Plaintiff on *unpaid* leave.

24. The City has a *de facto policy*, practice, and/or custom whereby, when any of its police officers are charged with or accused of a crime, and during the pendency of any such related proceedings or litigations, the police officers are placed on paid leave, relieved of duty with pay, or otherwise suspended with pay.

25. This *de facto policy*, practice, and/or custom of the City is so pervasive as to carry the force of law.

26. Examples of this *de facto policy*, practice, and/or custom of the City include:

   a. Sgt. Lowrie Simon was arrested for Felony Battery by the Broward

Sheriff's Office in November 2017. Sgt. Simon is an African American male and was placed on paid leave following his arrest and during the pendency of his proceedings. Following his conviction and <u>even while serving his sentence</u>, Sergeant Simon remained on paid status.

b.     Det. Stanley Jean-Francois was arrested for Aggravated Battery with a Deadly Weapon by the Miami Police Department in September 2017, a felony crime. Det. Stanley Jean-Francois is an African American male and was placed on paid leave following his arrest and during the pendency of his proceedings.

c.     Ofc. Jamesha McKinney was arrested for Burglary and Battery by the Miami Gardens Police Department in September 2021, a felony crime. Officer McKinney is an African American female and was placed on paid leave following her arrest and during the pendency of her proceedings.

d.     Ofc. Dennis Horn was arrested for Aggravated Battery by the Opa-Locka Police Department in May 2016. Arrested by his employing agency, Officer Horn is an African American male and was placed on paid leave following his arrest and during the pendency of his proceedings.

e.     Lt. Edward Law was arrested for D.U.I in his police vehicle by the Florida Highway Patrol in June 2014. Lt. Law is an African American male and was placed on paid leave following his arrest and during the pendency of his proceedings.

f.     Sergeant Johane Taylor, Jr., brother of the current Mayor for the City of Opa-locka, John H. Taylor and the son of former Opa-Locka Mayor Mayra Taylor, was relieved of duty <u>with full pay and benefits</u> although he is facing multiple life felonies for domestic violence which could confine him to prison.

27.     The foregoing comparator examples are all police officers who are or were employed by the City, subject to the same policies and procedures as Plaintiff, and charged or convicted of crimes.

28. All of those police officers were African American and were suspended <u>with pay</u> during the pendency of the felony actions brought against them. Plaintiff, on the other hand, is Hispanic and was suspended <u>without pay</u> during the pendency of his misdemeanor charge.

29. There have been many other instances in which City employees and officials have kept their pay and benefits while under criminal indictment/investigation:

   a. The FBI raided the City's City Hall arresting several city officials including then City Manager David Chiverton and Assistant Public Works Director Gregory Harris after a two-year long bribery and extortion conspiracy.

   b. Two city commissioners were charged under a separate federal indictment for their roles in shaking down business owners including the father of a terminally ill child.

   c. The FBI and the IRS arrested Opa-Locka influencer and former Miami-Dade Police Officer Dante Starks for his role in another public corruption case. The charges included conspiracy to commit extortion, conspiracy to commit bribery, aiding and abetting federal programs bribery, and failure to file income tax returns.

   d. Several family members of Opa-Locka's Mayor Mayra Taylor were also arrested on charges of corruption. Taylor's husband John Taylor, son Demetrius Taylor, and her sister Elvira Smith were arrested on several charges of election fraud.

   e. The FBI and the federal ATF arrested Opa-Locka Police Captain Arthur Balom for his participation in the distribution of cocaine, ecstasy, and oxycodone as part of a drug trafficking organization operating in Opa-Locka. According to the indictment, Balom aided and abetted in the distribution of illegal drugs by providing the criminal organization with information related to police activity in the area, directing officers to leave the area to facilitate criminal activity, provided bullet proof vests to criminals, and assisted members of the organization who were under

criminal investigation.

30. In all of the foregoing examples, the City employees or officials were suspended with pay and benefits despite having been charged with felonies under state and federal law.

31. Despite the City's well-established *de facto policy*, practice, and/or custom, the City unfairly refused to suspend Plaintiff with his pay and benefits.

32. Based on his suspension without pay, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination under Title VII.

33. Plaintiff's Charge of Discrimination identified the foregoing disparate treatment, lost wages, and hostile work environment caused by the City.

34. Plaintiff was thereafter terminated by the City.

35. Due to the timing, circumstances, and evidence, Plaintiff's disparate treatment and termination were in retaliation for Plaintiff's protected activity, including his filing of the Charge of Discrimination filed with the EEOC.

36. On February 5, 2025, the EEOC, after a long investigation, issued a "Letter of Determination" expressly finding that:

> Based on examination of evidence obtained during the investigation, there is reasonable cause to believe [the City] violated Title VII of the Civil Rights Act of 1964, as amended, when [Plaintiff] was subjected to disparate treatment, lost wages, a hostile work environment, and ultimately terminated after he engaged in protected activity.
>
> The commission concludes there is sufficient evidence to show a violation occurred under Title VII of the Civil Rights Act of 1964, as amended.

See Letter of Determination attached hereto as Exhibit "A."

## COUNT I – DISCRIMINATION
### (42 U.S.C. § 1983, and Title VII)

37.     Plaintiff realleges paragraphs 1 through 36.

38.     Plaintiff is Hispanic and is a member of a protected class.

39.     Plaintiff was subject to adverse employment action including disparate treatment, lost wages, and hostile work environment caused by, *inter alia*, the foregoing actions taken by the City's employees.

40.     Plaintiff and the comparators identified in ¶ 28 are similarly situated in all material respects, except for their race. The City treated these similarly situated employees outside of Plaintiff's protected class more favorably than Plaintiff by, *inter alia*, suspending them with full pay and benefits.

41.     The City has no legitimate nondiscriminatory reasons for suspending Plaintiff without pay because, *inter alia*, the City has a well-established *de facto policy*, practice, and/or custom whereby, when any of its police officers are charged with or accused of a crime, and during the pendency of any such related proceedings or litigations, the police officers are placed on paid leave, relieved of duty with pay, or otherwise suspended with pay.

42.     Based upon investigation and evidence, the EEOC unequivocally found that there was "sufficient evidence to show a violation occurred under Title VII of the Civil Rights Act of 1964, as amended." Exhibit A.

43.     By reason of the City's acts, omissions, wrongs, and other conduct, it was necessary for Plaintiff to retain the services of legal counsel to secure redress for the deprivation of Plaintiff's constitutional rights. Thus, Plaintiff incurred substantial and reasonable attorney's fees and costs and is entitled to recover them pursuant to 42 U.S.C. §1988 or Florida law.

**WHEREFORE**, Plaintiff demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) against the City for any and all damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

### COUNT II – RETALIATION
### (42 U.S.C. § 1983, and Title VII)

44. Plaintiff realleges paragraphs 1 through 36.

45. Plaintiff engaged in statutorily protected activity.

46. Plaintiff had a good faith, reasonable belief that the City was engaged in unlawful employment practices as evidenced by, *inter alia*, the foregoing actions taken by the City's employees.

47. Plaintiff opposed the City's employment practices by, *inter alia*, submitting the complaints described in ¶20 and filing the Charge of Discrimination with the EEOC evidenced by the attached Exhibit A.

48. Plaintiff suffered adverse action including disparate treatment and termination.

49. The timing, circumstances, and evidence were such that the protected activity was the actual (*i.e.*, "but-for") and proximate cause of the adverse action.

50. Based upon investigation and evidence, the EEOC unequivocally found that there was "sufficient evidence to show a violation occurred under Title VII of the Civil Rights Act of 1964, as amended." Exhibit A.

51. By reason of the City's acts, omissions, wrongs, and other conduct, it was necessary for Plaintiff to retain the services of legal counsel to secure redress for the deprivation of Plaintiff's constitutional rights. Thus, Plaintiff incurred substantial and reasonable attorney's fees and costs and is entitled to recover them pursuant to 42 U.S.C. §1988 or Florida law.

**WHEREFORE**, Plaintiff demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) against the City for any and all damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, SERGIO PEREZ, requests a jury trial as to all counts so authorized.

**DATED:** May 5, 2025

Respectfully Submitted,

_____
**DAVID P. REINER, II, ESQ.** FBN: 416400
REINER & REINER, P.A.
*Counsel for Plaintiff*
9100 So. Dadeland Blvd., Suite 901
Miami, Florida 33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com
eservice@reinerslaw.com